OPINION. Raum, Judge: The petitioner elected to use the “historical” invested capital method in the computation of its taxable adjusted excess profits net income for the year 1951. Having made this election, it became entitled to a credit based on invested capital under the applicable provisions of the Internal Bevenue Code of 1939 (secs. 430, 431, 434, 436, 437, 439, and 458). One of the factors entering into the determination of the amount of this credit is “daily borrowed capital.” That term is defined in section 439 (b) (1) to include the following: The amount of the outstanding indebtedness (not including interest) of the taxpayer, incurred in good faith for the purposes of the business, which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, deed of trust, bank loan agreement, or conditional sales contract. In the ease of property of the taxpayer subject to a mortgage or other lien, the amount of indebtedness secured by such mortgage or lien shall be considered as an indebtedness of the taxpayer whether or not the taxpayer assumed or agreed to pay such indebtedness, * * * [Italics supplied.] Treasury Begulations 130, sec. 40.439-1 (d), provide as follows: In order for any indebtedness to be included in borrowed capital it must be incurred in good faith for the purposes of the business and not merely to increase the excess profits credit. Similar language was contained in Treasury Begulations 112, section 35.719-1, relating to World War II excess profits tax in effect during the years 1940 to 1945, inclusive, and these regulations were held to be reasonable and valid. Hart-Bartlett-Sturtevant Grain Co., 12 T. C. 760, 769, affirmed 182 F. 2d 153,158 (C. A. 8); Mahoney Motor Co. v. Commissioner, 192 F. 2d 508, 512 (C. A. 8); Globe Mortgage Co., 14 T. C. 192, 197. The question before us whether $600,000 of the $900,000 borrowed by petitioner from Metropolitan represented an obligation “incurred in good faith for the purposes of the business.” The Commissioner, determined that it did not, and the burden of proving error in this determination is on the petitioner. Petitioner’s principal witness was its treasurer, Edward P. Lough-ran, who was also trustee of the Loughran Trusts. He undertook to detail a number of business reasons for the loan. However, we are satisfied from an appraisal of his testimony in the light of the record as a whole that these alleged reasons did not in fact motivate petitioner in borrowing any part of the $900,000 from Metropolitan in excess of $300,000. The reasons outlined and discussed by him impressed us as being nothing more than a lawyer’s attempt to marshal possible business objectives that might conceivably have motivated the loan, notwithstanding that they in fact played no part in the transaction. We do not believe his testimony that the obligation was incurred for the reasons which he spelled out. For example, one of the reasons said to have induced the making of the loan was the possibility that petitioner would have to repay an aggregate indebtedness to the Loughran Trusts of some $297,000, of which $63,000 was then overdue. We cannot take this seriously. The $600,000 made available to petitioner by Metropolitan was promptly invested in securities, without at that time paying to the Loughran Trusts any part of the $63,000 then overdue. The only payment on that indebtedness during 1951 was made many months later, in December, and was only in the amount of $24,000. Also, petitioner had meanwhile borrowed an additional $6,500 from the Loughran Trusts. The evidence is all too plain to us that the Loughran Trusts had been financing petitioner’s operations over a period of years, that there was no pressure for repayment of its loans, and that the borrowing from Metropolitan was wholly unrelated to petitioner’s loans from the Loughran Trusts. Another alleged reason for the loan was the need to make major repairs and replacements in the buildings. The amount of the actual expenditures made by petitioner for these purposes during the years immediately following the loan and petitioner’s express policy of making “as few repairs and replacements as possible” as long as rent controls were in effect make incredible to us Loughran’s testimony that this alleged reason played any part in the transaction. Another alleged reason was that the larger loan would make the property more salable. However, the evidence discloses that petitioner had rejected several offers to sell its property and that it was not interested in selling. We cannot believe, in these circumstances, that petitioner borrowed an additional $600,000 to make its property more salable. We think that petitioner has not carried its burden of proof and that the various business reasons suggested were spurious. We must therefore conclude that the Commissioner did not err in his determination that the obligation with respect to $600,000 of the $900,000 borrowed from Metropolitan in 1951 was not incurred in good faith for the purposes of petitioner’s business. Decision twill be entered wnder Bule 60.